UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

UNITED STATES OF AMERICA, . Case Number 1:15-CR-118
.
Plaintiff, .
. Change of Plea Hearing
.
- v - .
. Friday, May 5, 2017
CODY LEE JACKSON, . 1:00 p.m.
.
Defendant. . Cincinnati, Ohio
. . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MICHAEL R. BARRETT

For the Plaintiff:

CHRISTY L. MUNCY, ESQ. (AUSA)
United States Attorney's Office
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202

For the Defendant:

CANDACE C. CROUSE, ESQ.
Pinales Stachler Young Burrell & Crouse
455 Delta Avenue, Suite 105
Cincinnati, Ohio  45226

STEPHEN J. WENKE, ESQ.            RAVERT J. CLARK, ESQ.
36 East Seventh Street            114 East Eighth Street
Suite 2020                        Cincinnati, Ohio  45202
Cincinnati, Ohio  45253

Also Present:       F.B.I. Special Agent Pamela S. Kirschner
                    Officer Beth Roach, Blue Ash Police

Courtroom Deputy:   Barbara A. Crum

Court Reporter:     Maryann T. Maffia, RDR

**P R O C E E D I N G S**

1

2   COURTROOM DEPUTY:  On the docket is District Court

3   Case Number 1:15-CR-118:  *United States of America versus Cody*

4   *Lee Jackson.*

5       We're here this afternoon for a change of plea.

6       THE COURT:  Okay.  You guys can be seated.  Counsel

7   want to enter their appearances for the record, please.

8       MS. MUNCY:  Good morning, Your Honor.  Christy Muncy

9   on behalf of the United States.  Also seated at counsel table

10  is Special Agent Pamela Kirschner with the F.B.I. and Officer

11  Beth Roach with the Blue Ash Police Department.

12      THE COURT:  Okay.

13      MS. CROUSE:  Candace Crouse on behalf of Cody

14  Jackson, Your Honor.

15      MR. WENKE:  Steve Wenke, also on behalf of the

16  defendant.

17      THE COURT:  Cody, how you doing today?

18      THE DEFENDANT:  Good, Your Honor.

19      THE COURT:  Okay.  I know from prior meetings we've

20  had that you did receive a copy of the Indictment, and you had

21  a chance to go over that, right?

22      THE DEFENDANT:  That's correct.

23      THE COURT:  And you and Candace and Steve have

24  discussed that, right?

25      THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And they explained to you the nature and

2     the meaning of the charges that were set forth in that

3     Indictment, right?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And then usually what happens is, the

6     prosecution, in this case Miss Muncy, would give your lawyers

7     information that she tells them that, if there were a trial in

8     the case, she would attempt to get into evidence to try to

9     seek a conviction, right?  So they told you about what kind of

10    evidence was stacked up against you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And based upon that conversation, did you

13    guys discuss if there were any possible defenses to the

14    charges or if the smartest thing to do was to attempt to

15    negotiate some kind of a plea arrangement in this matter?

16         THE DEFENDANT:  Yes.

17         THE COURT:  So you want to negotiate a plea

18    arrangement, right?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  All right.

21      Based upon that, I'm going to ask counsel if they wish to

22    make a motion regarding a change of plea at this time.

23         MS. CROUSE:  Yes, Your Honor.  At this time, we would

24    move to withdrew our previously tendered plea of not guilty

25    and to enter a plea of guilty to Count One of the Indictment

in this case.

        THE COURT:  So, Cody, just to verify, you wish to withdraw the previously entered plea of not guilty, as stated by Candace, and enter a plea of guilty to Count One of the Indictment; is that correct?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  All right.  And I'll ask you at this time:  How do you wish to plea to the charge in Count One of the Indictment, guilty or not guilty?

        THE DEFENDANT:  Guilty, Your Honor.

        THE COURT:  Okay.  Before I accept the plea and move any further in the case, I have to make sure of two things: number one, that you understand the constitutional rights to a trial and the rights associated with that that you would be giving up if we move forward with the plea arrangement; then the second item is, I need to discuss the plea arrangement with you just to make sure you understand it.

    Fair enough?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  All right.  To ensure truthful answers, Miss Crum is going to administer an oath or affirmation to you, which means that if you were to tell me something that was a falsehood, Miss Muncy could bring a charge of perjury against you because you're under oath.  But there's no trick questions; we're just talking about your rights and the Plea

1    Agreement.  Fair enough?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Okay.

4       Barb?

5       (The defendant was duly sworn by the courtroom deputy.)

6           THE COURT:  So, Cody, where did you grow up?

7           THE DEFENDANT:  Wisconsin Rapids, Wisconsin, Your

8    Honor.

9           THE COURT:  Okay.  And when did you come to

10   Cincinnati?

11          THE DEFENDANT:  Um, it would have been at the

12   beginning --

13          MR. WENKE:  August of 2015.

14          THE COURT:  Like I said, there's no trick questions,

15   so I take that back.

16      (Laughter.)

17          THE DEFENDANT:  Yeah.  It was, like, August of 2015.

18          THE COURT:  2015?

19          THE DEFENDANT:  In that area.

20          THE COURT:  So whatever education you had would have

21   occurred in Wisconsin or someplace else?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And how far did you get in school?

24          THE DEFENDANT:  Eleventh grade, I completed.

25          THE COURT:  Okay.  Any GEDs or anything after that?

1        THE DEFENDANT:  No.  I started it, just never got to

2    finish it.

3        THE COURT:  Okay.  And the reason I ask is because

4    I've already talked about two documents:  one, the Indictment;

5    and, two, the Plea Agreement.  Were you able to read those

6    documents?  Are your skills sufficient to do that?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Okay.  So if you had questions about

9    things that were in those documents like statutory language

10   and stuff like that, any question, did you ask Candace or

11   Steve and did they explain to you what those meant?

12       THE DEFENDANT:  They did, Your Honor.

13       THE COURT:  Okay.  In terms of your understanding of

14   the proceedings we're in today, have you had any kind of --

15   are you on any kind of medication, alcohol, any type of drugs

16   or anything that affects your ability to understand the

17   proceedings?

18       THE DEFENDANT:  I'm not, Your Honor.

19       THE COURT:  Okay.  Have you ever been treated for any

20   kind of mental illness or substance abuse such that either the

21   current condition of one of those items or residual effects of

22   one of those items or treatment of one of those items affects

23   your ability to understand what we're talking about today?

24       THE DEFENDANT:  They don't, Your Honor.

25       THE COURT:  Candace or Steve, do either one of you

two want to just, without waiving any attorney-client

privilege, just discuss the types of conversations you've had

with Cody leading up to today and whether or not you believe

he is competent to enter a knowing, intelligent, and voluntary

plea?

MS. CROUSE:  Your Honor, we spent a lot of time going

over all of the discovery in this case with Cody.  We've

talked about possible defenses leading up to this plea.  We

talked about guidelines.  So we've gone over everything very

thoroughly with him.  He has been very engaged in his defense,

and we do believe that he is competent to enter a plea today.

THE COURT:  Okay.

Cody, I mentioned I was going to discuss a couple of

things with you, first your constitutional rights and then the

agreement itself.  If we go through with the Plea Agreement,

that indicates you are giving up your right to a trial by

jury.  But I just want to make sure that you understand that,

if you wanted to, you could stand by the previously entered

not guilty plea and demand a trial by jury.  Do you understand

that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And you have the right to be represented

at that trial.  Steve or Candace would be with you throughout

those proceedings.  They would do a number of things, if we

had a trial, to provide a defense for you.  That would include

1  trying to restrict evidence that the government was able to

2  produce during the course of the trial.  They could make

3  opening statements, closing arguments, a number of things like

4  that.  I think, perhaps, the most important thing that

5  criminal defense lawyers do is anyone that would testify

6  against you, they would try to shake or discredit their

7  testimony on the witness stand by asking them questions in

8  what we call cross-examination.

9      Are you generally familiar with that concept?

10          THE DEFENDANT:  I am, Your Honor.

11          THE COURT:  Okay.  Another important right is that

12  nobody can make you testify in a case.  You have an absolute

13  right not to testify, and not testifying cannot be held

14  against you by the jury.  The only way that Christy would ever

15  get a chance to ask you questions would be if, in consultation

16  with Steve and Candace, you decided it was smart to waive your

17  right not to testify, you took the witness stand first, they

18  would ask you questions, and only after that could Miss Muncy

19  cross-examine you.

20      Do you understand that?

21          THE DEFENDANT:  I do, Your Honor.

22          THE COURT:  Okay.  If you thought there were

23  witnesses that could provide favorable evidence in the case

24  and they could get them served with subpoenas, then the

25  Marshal Service would make those people show up in court.

1    Okay?

2        The burden of proof in a criminal case is guilt beyond a

3    reasonable doubt.  That means the United States would have to

4    establish these elements that you knowingly used and

5    facilitated, by means of interstate commerce persuaded,

6    induced, enticed or coerced an individual under 18 years of

7    age to engage in prostitution or sexual activity, that you

8    were aware that such person was less than 18 years of age, and

9    that you could have been charged with a criminal offense from

10   engaging in the specified activity.

11       Those are the elements they would have to prove to a jury

12   beyond a reasonable doubt.  Okay?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  Now, every time we have a trial in this

15   courtroom, whether it's a civil case or a criminal case, every

16   time we take a break, or nearly every time, I tell the jury

17   important things.  First, they're not to make up their mind

18   during the course of the case itself.  In other words, they

19   are to keep an open mind throughout the proceedings.  In order

20   to determine what happened, at the end of the case, after

21   they've heard all the evidence, all the arguments and the

22   instruction of law by me, and only then are they to try to

23   figure out what happened and work through it.

24       In a criminal case, I go a step further.  And I say

25   throughout that process they have to presume that Cody is

innocent unless the United States has overcome that burden of proof beyond a reasonable doubt, which means they have to presume you're innocent unless and until all 12 of them get in the back room, talk about it, and they decide if the United States has proven those elements beyond a reasonable doubt. Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Are you willing to give up those rights and proceed with the plea arrangement that we've been talking about?

THE DEFENDANT:  I am, Your Honor.

THE COURT:  All right.  So let's talk about the charge in the case.  It's a violation of 18 U.S.C. 2422(b), which it basically is the coercion and enticement which is made up of the elements I just discussed.

The appropriate penalties in this case are a minimum of ten years imprisonment, and you could be facing up to a lifetime of imprisonment if convicted.

Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  All right.  Supervised release has to be at least a term of five years, and we'll talk about supervised release in more detail in a moment, and it could be up to life.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

1    THE COURT:  There is a possible fine not to exceed

2  $250,000, but typically in a situation like this the fines

3  don't occur, but that's a possibility.  Do you understand

4  that?

5    THE DEFENDANT:  I do, Your Honor.

6    THE COURT:  And in every criminal case where there is

7  a count of conviction, there is a 100-dollar special

8  assessment for any count.  In this case, we're talking about

9  one count, $100.  Okay?

10    THE DEFENDANT:  Yes, Your Honor.

11    THE COURT:  All right.  And also there is forfeiture

12  of improper material that is -- that could have been

13  confiscated by the government during this case.

14    You have other state charges pending against you, which

15  we'll talk about in a few moments.  Okay?

16    THE DEFENDANT:  Yes, Your Honor.

17    THE COURT:  We'll talk about how those two things

18  intersect in this particular situation.

19    Now, once the plea is accepted by me, that is the same as

20  if you were found guilty of Count One by a jury.  All right?

21  Then we proceed with the sentencing at some point down the

22  road.

23    Because this is a felony, there are certain things that

24  may impact the rest of your life.  Obviously, because of the

25  nature of this offense, you're going to have reporting

1    registration requirements and things like that.  I'm sure your

2    lawyers have talked to you about that, right?

3            THE DEFENDANT:  They have, Your Honor.

4            THE COURT:  All right.  Also because it's a felony --

5    I don't know if you're a firearms or a gun person, but for the

6    rest of your life you're going to be prohibited from ever

7    possessing, using or owning a firearm or a dangerous ordnance.

8    Okay?

9            THE DEFENDANT:  Yes, Your Honor.

10           THE COURT:  All right.  It may also affect other

11   things down the road if you're applying for benefits or

12   employment or whatever comes up.  If they ask you a question

13   about it --

14       "Have you ever been convicted of a crime punishable by a

15   year or more in prison?"

16       -- you're going to have to say yes.  Okay?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  There may be a number of other things

19   that impact your life based upon this, and I don't know what

20   they all are, but I just want to make sure you're at least

21   aware of those basics.  Fair enough?

22           THE DEFENDANT:  Thank you.

23           THE COURT:  All right.  Let's talk a little bit --

24   Candace mentioned you had a discussion about the guidelines.

25   Let's talk about that.

In 1984, Congress passed the Sentencing Reform Act. What they did was, they established guidelines for sentencing in criminal cases. That was reduced and has been modified several times over the years in this book called *United States Sentencing Commission Guidelines Manual.* The concept behind the manual was to do a number of things. One was to fashion appropriate sentences based upon the crime that's in play; also to take into account other factors, social history, background, things like that.

What happens at the end of this case is that the Probation Department will interview you, and your lawyer should be present when that interview occurs. They'll do sort of a social background, employment background, history, things like that. They'll also run your criminal record, if you have any; other than the state case, we already know about that.

They're also going to talk with Miss Muncy and perhaps the agent seated at the table. They're going to get their version of the events that happened in this case.

They take all that information, they digest it, and they put it in a report that's called a Presentence Investigation. That report in draft form goes out to the lawyers first before I ever see it. Sometimes, the lawyers have comments or objections to things that are in the report. Oftentimes, they can work that out with the Probation Department by talking with them. Sometimes they can't. If they can't, then they

file formal objections to the report that's actually sent to
me after that initial process, and those objections we deal
with at or before the time of sentencing.

Okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Now, up until about, I don't
know, now it's about eight or nine years ago, if the Probation
Department had done their homework correctly and calculated
the guidelines correctly, I would be obligated to impose a
sentence somewhere between the minimum and maximum range that
they've calculated.  All right?

Now, the Supreme Court says:  Not so fast, that should be
the starting point for judges.  But if the judge thinks that
the guideline calculation as it turns out is perhaps not as
severe as it should be based upon all the facts and
circumstances, I could impose a sentence which is more harsh
or more severe than what was calculated as long as I could
justify it in the record.

On the flip side of the fence, if I think the guideline
calculation is inappropriately high for some reason, I can go
below that as long as I can justify it in the record and don't
go below any mandatory minimums.

All right?  So I've got some discretion in that.

So what normally happens is, I take a look at the
presentence investigation, I hear the arguments of the

1  lawyers, and I figure out what's going to happen.  However, in

2  this particular situation, called a (c)(1)C() plea

3  arrangement, the lawyers have gotten together and they've

4  agreed to recommend a sentence to me.  In this case, the

5  recommended sentence involves a range as well, as the

6  guidelines do, of a term of imprisonment that was not less

7  than 120 months, mandatory minimum, but also not more than 180

8  months, which is obviously less than life.  Right?

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Okay.  So what happens is, I've taken a

11  look at that recommendation.  There is a second part.  Because

12  of the state court cases you have, which are B1405011 and

13  B1504831, you're anticipating some type of a sentence from

14  those cases as well, right?

15            THE DEFENDANT:  I am, Your Honor.

16            THE COURT:  Right.  Okay.  So everybody has agreed

17  that the state court sentences should run concurrent with the

18  federal court sentences, correct?

19            THE DEFENDANT:  That's correct.

20            THE COURT:  All right.  Now, an agreed upon sentence,

21  even though the lawyers agree on it, is not binding upon me.

22  If for some reason I took a look at the presentence

23  investigation and I thought "This is all wrong, I can't go

24  along with the agreed upon sentence," we would be back at

25  square one with a not guilty plea and trying to figure out

1  what happened.  All right?

2      But you should know that since we've been doing agreed

3  upon sentences like this, I've never refused to honor one

4  because I believe it's fair for everybody to understand what's

5  going on as they go into it.  Okay?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  As long as you understand I don't have to

8  follow it.

9              THE DEFENDANT:  I do, yes, Your Honor.

10             THE COURT:  All right.  I mentioned supervised

11  release, which I'm not sure --

12     Is there an agreement on that, guys?  I can't remember.

13             MS. MUNCY:  It's lifetime, Your Honor.

14             THE COURT:  Okay.  So --

15             MS. MUNCY:  It's -- I'm sorry.  It's paragraph 7(a)

16  on page 3.

17             THE COURT:  Okay.  So what will happen is, you will

18  be placed on supervised release for that period of time.  If,

19  depending on how things go, sometime down the road a lesser

20  time is indicated, I can entertain a motion at that time,

21  perhaps, depending on where everybody stands at that time,

22  including the United States and your lawyers.

23     In any event, supervised release is a form of community

24  control.  I really can't recall what your record was, but if

25  you have any --

1    Have you ever been on community control, probation,

2  anything like that?

3           THE DEFENDANT:  Only as a juvenile, Your Honor.

4           THE COURT:  Okay.  I mean, did you have to report to

5  an officer, or how did that work?

6           THE DEFENDANT:  I did briefly.  It was for about a

7  period of three months.

8           THE COURT:  Okay.  So what happens is, upon your

9  release from the institution, within 72 hours you have to

10  report to the Probation Department.  An officer will sit down

11  and go over the rules and regulations of supervised release,

12  which are essentially the same as probation.  They always

13  include not committing any other federal, state or local

14  offenses.  In addition to the statutory ban, they also include

15  not owning, using or possessing a firearm.  Obviously, no

16  illegal controlled substances and things like that.

17    There will be other conditions such as the registration

18  and reporting requirements you may have, things like that.

19    If they determine that a mental health assessment is

20  necessary and that there should be treatment, that's usually

21  made a term of supervised release.

22    Likewise, if they figure out if there's any kind of

23  alcohol or drug problems going on in your background, they can

24  make assessment and treatment part of supervised release.  And

25  whatever other things they think are appropriate, I typically

1  sign off on.  Okay?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  So that means that while you're on

4  supervised release you're not in total control of your life;

5  somebody is looking over your shoulder.  If that person

6  looking over your shoulder decides that you violated the terms

7  of supervised release, they could do a couple of things.

8  Oftentimes they just meet with you one on one and say, "Hey,

9  what's going on?  Can we straighten this out?"  Sometimes you

10  can, and sometimes you can't.

11      If you can't or if you pick up something like a new

12  charge, they will file a formal violation report with me, we

13  come back in court, and I hear evidence about the alleged

14  violation.  If I do, in fact, find you violated the terms of

15  supervised release, then the ball is in my court to figure out

16  what to do.  Sometimes it can mean an extension of supervised

17  release, which in this case, you know, you're already doing

18  lifetime as we start out.  But it could also mean I could send

19  you back to prison for a period of time up to the term of

20  supervised release.  So I've got a fair amount of control for

21  a fairly long period of time.

22      Are you all right with that?

23          THE DEFENDANT:  I am, Your Honor.

24          THE COURT:  Okay.  In this particular situation in

25  paragraph 10, then also contained on the Plea Agreement, the

County Prosecutor's Office has signed off on the concept of
concurrent sentences.  So you're aware of that, right?

       THE DEFENDANT:  I am, Your Honor.

       THE COURT:  Okay.

  Christy, is there anything that if I've misstated what's
contained in the Plea Agreement, can you straighten that out
for the record, and can you place on the record any other
items of the Plea Agreement you think are appropriate at this
time?

       MS. MUNCY:  Yes, Your Honor.  I don't think you've
misstated anything.  You've covered, in its entirety,
paragraphs 1, 2, 3, 4 and 6, which are the Offense of
Conviction, the Elements of the Offense, the Penalties, the
Waiver of Rights, and the Applicability of the Advisory
Sentencing Guidelines.

  The additional items in the Plea Agreement are as follows,
and I'll just briefly touch on each.

  Mr. Jackson understands that he waives protection afforded
to him by the Rules of Criminal Procedure, the Rules of
Evidence, and the Sentencing Guidelines, and that any
statements made during the course of plea discussions could be
used against him.

  The parties agree that the Statement of Facts set forth in
Attachment A and incorporated as a part of the Plea Agreement
are accurate.

1    The additional item to the agreed sentence is that

2 Mr. Jackson agrees, in addition to the term of imprisonment of

3 not less than 10 and not more than 15 years, which shall run

4 concurrent with the state sentence, is that he will be

5 sentenced to lifetime supervised release subject to all

6 mandatory and special conditions that the Court may impose.

7    He further agrees to not have any contact with MV1 until

8 she has reached the age of 18.

9    He agrees to waive or -- I'm sorry.  He agrees to forfeit

10 all property seized as a result of the investigation into his

11 activities, and he waives and holds harmless the United States

12 and its agents and employees harmless from any claims

13 whatsoever in conjunction with the seizure, forfeiture, and

14 disposal of the property seized.

15    The United States agrees not to further prosecute him for

16 conduct prior to the date of this Plea Agreement that was part

17 of the same course of criminal conduct described in the

18 Indictment and known to the United States Attorney's Office.

19    The U.S. Attorney's Office further agrees to dismiss the

20 single-count Indictment in Case Number 1:16-CR-003.

21    The Hamilton County Prosecutor's Office has agreed that

22 once judgment is entered in this case, it will dismiss Case

23 Number B166547, and further agrees that the sentences to be

24 imposed for the counts that Mr. Jackson has pled guilty to

25 will run concurrent to the sentence in this case.

Mr. Jackson waives his right to appeal. In exchange for the concessions made by the United States Attorney's Office in the Plea Agreement, the defendant waives the right to appeal the sentence imposed, except if the sentence imposed exceeds the statutory maximum or is outside the guidelines set forth in the Plea Agreement.

He also waives the right to attack his conviction or sentence collaterally, such as by way of a motion brought under Title 28 United States Code Section 2255 or 18 U.S.C. 3582. However, this waiver shall not be construed to bar a claim by him of ineffective assistance of counsel or prosectorial misconduct.

He agrees that he is not a prevailing party as these are used in the Hyde Amendment.

He waives all rights under the Freedom of Information Act related to this investigation and prosecution, and agrees not to file any requests for documents.

He understands that there are special conditions related to this offense, and he understands that he will be required to register under SORNA as a result of his conviction, and that he must register as a sex offender and keep such information current in the jurisdictions where he reside, is employed, or is a student.

He must update such registration not later than three business days after any change of his name, residence,

employment, or student status, or other relevant information. Failure to comply with those obligations would subject him to prosecution both federally and in the state.

He understands that during any term of supervised release he will be subject to special conditions which include, but are not limited to:  restrictions or prohibitions of his computer usage; installation of monitoring software on any of his computers; prohibitions on his possessing any obscenity in any form; participation in recommended treatment programs; complete disclosure of any contact with minor children; among other restrictions and conditions which are reasonably related to his offense.

He understands that the Court may accept the plea, reject it, or defer a decision until after the Court has reviewed it. The Court has previously told Mr. Jackson what that entails.

He understands and agrees to abide by the terms of this agreement, and he understands that if he violates the agreement, the United States Attorney's Office will be relieved of all of its obligations under this agreement and may institute any charges or sentencing recommendations that would otherwise be prohibited by the agreement.

He acknowledges that he has read and understands this Plea Agreement and accepts the Plea Agreement knowingly and voluntarily, and it was not made as a result of any force, threats, or promises other than those promises contained in

1   the Plea Agreement.

2       This is a complete agreement between the parties.  It

3   supersedes all other promises, representations,

4   understandings, or agreements between the parties.  That was

5   signed by all parties, in addition to the Hamilton County

6   Prosecutor's Office, and made part of the record, Your Honor,

7   as Document Number 42.

8           THE COURT:  All right.

9       Candace or Steve, could you show Cody page 6 of the Plea

10  Agreement?

11      Do you see that, Cody?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  Your name is typed there, and above that

14  appears to be your signature.  Did you sign that?

15          THE DEFENDANT:  I did, Your Honor.

16          THE COURT:  Did you sign that document because that

17  contains the entire understanding you and your lawyers have

18  reached with the United States?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Now, other than the fact

21  that, absent the Plea Agreement, both the State of Ohio and

22  the United States could seek to prosecute you to the fullest

23  extent of the law, did anybody levy any kind of force,

24  pressure, or coercion on you such that this is not your own

25  free and voluntary act?

1          THE DEFENDANT:  They haven't, Your Honor.

2          THE COURT:  All right.  And other than the

3    representations contained in the Plea Agreement involving

4    yourself, the State of Ohio, and the United States as to the

5    agreed upon sentence, did anybody make you any special

6    promises outside of the Plea Agreement or tell you I'd treat

7    the case a certain way just in order to get you to enter a

8    plea?

9          THE DEFENDANT:  They haven't.

10          THE COURT:  So it's your own free and voluntary act,

11    right?

12          THE DEFENDANT:  It is, Your Honor.

13          THE COURT:  Do you think that Candace and Steve have

14    fully advised you of all the facts and circumstances, and Jay

15    is in the courtroom as well, surrounding this situation?  Are

16    you satisfied with their advice and representation?

17          THE DEFENDANT:  I am, Your Honor.

18          THE COURT:  How do you want to handle the Statement

19    of Facts?

20          MS. MUNCY:  Your Honor, Special Agent Kirschner could

21    read those, please.

22          THE COURT:  Okay.

23     When you're ready, ma'am, just give us your name, spell

24    your last name, then give us your duty assignment and then the

25    facts.

SPECIAL AGENT KIRSCHNER:  Pamela S. Kirschner,
K-i-r-s-c-h-n-e-r.  I'm an F.B.I. agent in the Cincinnati
Division.

Statement of Facts.  The United States and defendant, Cody
Lee Jackson, stipulate and agree that if this case proceeded
to trial, the United States would prove the facts set forth
below beyond a reasonable doubt.

They further stipulate and agree that these are not all of
the facts that the United States would prove if this case had
proceeded to trial.

In February of 2015, while under local supervision in
Hamilton County, Ohio, Jackson met MV1 through social media
and began regularly communicating with her on the Internet.
Jackson persuaded MV1, who lived in the Cincinnati area, to
come to his apartment.  Jackson and MV1 engaged in sexual
intercourse while at Jackson's apartment, and elsewhere.
Because Jackson was on state monitoring at the time, on
occasion Jackson would have another person take MV1 to other
locations, including Louisville, Kentucky, and Knoxville,
Tennessee, due to the conditions of his release.

In July of 2015, Jackson's state supervision was relaxed.
He immediately left Ohio for South Carolina.  During the
course of his conduct between the timeframe referenced in the
Indictment, Jackson contacted MV1, and others, through social
media and, among other things, attempted to persuade or entice

some of them to travel in interstate commerce to engage in
sexual activity.

All or substantial portions of the aforementioned facts
occurred in the Southern District of Ohio.

I have read the Statement of Facts and have carefully
reviewed it with my attorney. I acknowledge that this is true
and correct.

It's dated 4-19 of 2017, and it's signed by Cody Lee
Jackson, the defendant.

It says, "I am Cody Lee Jackson's attorney. I have
carefully reviewed the Statement of Facts with him," also
signed on 4-19-2017 by Candace Crouse, attorney for
Cody Lee Jackson.

THE COURT: Cody, looks like the same signature as on
the Plea Agreement. Did you sign this document?

THE DEFENDANT: I did, Your Honor.

THE COURT: Did you sign it because it's accurate?

THE DEFENDANT: I did, Your Honor.

THE COURT: Is it wrong or incorrect in any way I
need to know about at this time?

THE DEFENDANT: It is not, Your Honor.

THE COURT: Can I take it then that you're entering
the plea of guilty to Count One of the Indictment because you
did, in fact, commit that offense?

THE DEFENDANT: That's correct, Your Honor.

1      THE COURT:  Okay.  Based upon all the conversations

2  we've been having about the import of the Plea Agreement and

3  your constitutional rights, I'll ask you for the final time:

4  How do you wish to plea to the charge in Count One of the

5  Indictment, guilty or not guilty?

6      THE DEFENDANT:  Guilty, Your Honor.

7      THE COURT:  Based upon my observations of Cody in

8  court today, the appearance and the manner in which he has

9  been answering the questions that I've been asking him, I'm

10  satisfied he's in full possession of his faculties, he's not

11  suffering from any apparent physical or mental illness, he's

12  clearly not under the influence of any type of medications,

13  narcotics or alcohol, and he does understand these

14  proceedings, as well as the nature and the meaning of the

15  charge to which he is entering the plea of guilty, and he

16  certainly understands the consequence of the plea of guilty

17  based upon the plea negotiations undertaken on his behalf

18  which have resulted in the Plea Agreement with the recommended

19  sentence.

20      Therefore, I find that Cody is fully competent and capable

21  of entering an informed plea.  The guilty plea is knowing,

22  it's voluntary, and it's supported by an independent basis in

23  fact which contains each of the essential elements of the

24  offense charged, substantial portions of which have occurred

25  in the Southern District of Ohio.

1    So at this time I'll accept the plea.  I won't make a

2  finding of guilty at this time because we have to get the PSI

3  that I talked about.  Okay?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  I understand, and I think I've got this

6  right, is we'll come back in front of me first, and then you

7  will dispose, with your state lawyer, of the state charge.

8  Correct?

9         MS. CROUSE:  Yes, Your Honor.

10        THE COURT:  Okay.  Barring any unforeseen

11 circumstances, that's exactly how it will work.  You will

12 remain in the custody of the Marshal Service until we've taken

13 care of your case in front of me.  PSIs usually take anywhere

14 from four to six weeks.  Obviously, there will be credit for

15 time served and all that stuff.  But I probably won't see you

16 again for another month or month and a half, okay?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  Any questions or anything at this time?

19        THE DEFENDANT:  No, Your Honor.

20        THE COURT:  Counsel?

21        MS. CROUSE:  No, Your Honor.

22        MR. WENKE:  No, Judge.

23        THE COURT:  Christy?

24        MS. MUNCY:  No, Your Honor.  Thank you.

25        THE COURT:  Anything else, Barb?

1          COURTROOM DEPUTY:  No, that's it.

2          THE COURT:  All right.  So we'll stand in recess at

3    this time.  We'll reconvene when the PSI is back.

4       As I indicated before, Cody, if your lawyers have any

5    formal objections they wish to file to the presentence

6    investigation, with your input of course, they'll file that

7    and we will deal with those at or before the time of

8    sentencing.  Normally, unless it's really complicated, I do it

9    immediately before we actually get into the sentencing phase.

10   Okay?

11         THE DEFENDANT:  Thank you, Your Honor.

12         THE COURT:  Anything else?

13         MR. CLARK:  That's it.

14         THE COURT:  All right.  We'll stand in recess.

15   Thanks, everybody.

16         COURTROOM DEPUTY:  Court is now adjourned.

17      (The proceedings concluded at 1:40 p.m.)

18

19              C E R T I F I C A T E

20

21      I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

22   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

23

24   S/MARYANN T. MAFFIA, RDR

25   Official Court Reporter